United States v. Shulman May it please the Court, my name is Mark Harris and I represent the appellant Robert Shulman. Mr. Shulman's conviction cannot stand for one simple reason. The government did not prove, beyond a reasonable doubt, that his purpose in sharing information with Tibor Klein was in order that Klein would trade on that information. In insider trading cases, the tipper's purpose that the tippee should trade is a critical element of the crime. In fact, as this Court said in Mortoma, it is the element that distinguishes the innocent sharing of information from the commission of a federal crime. This is an almost unique case where the government put on no evidence of purpose. In fact, in the entire case that the government presented, the only evidence that related to Mr. Shulman directly of something that he did was that on one night over dinner and drinks, he blurted out, you'd be nice to be king for a day. That statement in itself does not show what his purpose was. But the government's argument is that he said much more than that. That the circumstantial evidence suggests or proved that he actually said Pfizer is going to buy King. And this is a critical point, Your Honor. The government, the jury certainly had the right to disbelieve Mr. Shulman's testimony as it has the right to disbelieve any evidence that's presented. But wasn't there circumstantial evidence to show that indeed he must have said something more? Because if you just look at that statement by itself, I mean, what does it mean, it would be nice to be king for a day? And if you look at Klein's actions, he took concrete steps almost immediately to convey the information and put it in action so that there would be trading. And so couldn't the jury find from the sequence of events, the overall circumstances, that in fact your client said something more than it simply would be nice to be king for a day? I don't believe so, Judge Shin. The reason why is if you subtract out the testimony of Mr. Shulman, if there's no testimony at all about what happened on that night, in other words, no direct testimony, nobody else who was there who was present could talk about what was said, then all you have are the events that happened afterward. So all you would know, all the jury would know would be that they had dinner and drinks, and then the next day or two days later, Klein trades and Sheckman trades, and then they go through a whole series of escapades concerning covering up whatever they did and buying and selling. Don't they also know, didn't the jury also know that Klein was Shulman's money manager? Yes, they would know that. That he had discretionary authority over Shulman's accounts? Yes. That he, on behalf of Shulman, had previously purchased stock in one of Shulman's clients? Each of those facts, Your Honor, I think if you dissect them, you see that the case does not add up. Let me just finish the first point and then turn to that, Your Honor. If there's no testimony about what happened that night, and all there are are later actions, I don't believe the government would even say that it could prove on that basis that Shulman must have told him a tip with the intent that he traded. And I want to make one further point about that. Again, if that's all there was were just the later events, that would not be enough to prove that Klein tipped him. But even if it was enough to show that Shulman must have said something to him which conveyed the information, that still doesn't show purpose. That's the important point here. We agree that what Shulman told Klein was confidential, non-public information, which he should not have disclosed as an ethical matter. And as a result of that, he effectively was telling him there's something important that I know about. The statement, wouldn't it be nice to be king for a day by itself, is not confidential information. It only becomes confidential information if there are additional facts disclosed, namely that there is going to be an acquisition. I don't think so, Your Honor. I think if a person, again, Shulman was referring to Klein, referring to King, he's admitted that, and he also knew that Klein knew he was referring to King. So in other words, what he was saying— His explanation is he was just boasting. Correct. Does that make any sense? Sure. Why would you boast? I mean, what do you gain from boasting about such inside information? A very plausible conversation could have gone like this, Your Honor, and obviously we don't have evidence either way, but it's very plausible that Klein said to Sheckman, what's going on with your clients? And he said, well, can't tell you anything, but it would be nice to be king for a day. Very plausible that that happened. Gossip is not a crime. Gossip does not make insider trading. There's a separate element, and Martoma, as Your Honors know, talked about this. The intent to trade is crucial. The purpose, that the reason why he said this was not just to gossip, was not to joke, was not to boast, what was specifically in order that he would trade, that's the key element here, and they did not have proof of that. It was to show that he had inside information about something important. Correct. Yes, Your Honor. That's exactly right. Each of the other facts that Your Honor mentioned, they don't add up to that necessary proof. For example, I think the last thing you mentioned was Enzo. Enzo is a good example of the really remarkable level of speculation and hypothesizing that the government went through to try to prove its case. The way they explain what the Enzo proof supposedly shows, these were their words in their brief, that they say that Enzo shows that Shulman knew that Klein would trade in the stock of Shulman's clients even if improper. That's what they want to argue. They want to argue that, well, what we see from this is that Shulman knew that Klein would go do something that was a little bit dicey, improper, and so that explains what he must have done later on with King. But the premise isn't there. There is no showing at all that Shulman, excuse me, that Klein knew that there was anything improper about this. By the way, there isn't anything improper about this as a matter of ethics or as a matter of law. Some firms take on a view. What about what Scheckman said? Scheckman, correct me if I got this wrong, Scheckman, I believe, testified that Klein had said to him on Monday, August 16th, that he had inside information about King, that Pfizer was looking to acquire King. Assuming, as I think we have to, that Scheckman was telling the truth, couldn't a rational jury infer that Shulman was lying when he said that he never told Klein about a potential merger? So there's two components. I'll digress quickly. One is the lying. The government's case here has to depend, and they're pretty explicit about this, on some argument about a false exculpatory. Their theory is that because they can't get to the proof of purpose, they have to argue in this two-step. Number one, that he must not have really said King for a day. He must have said something else. And then as a result of that, try to use the fact that he lied to try to make their case. But they can't do that. The cases are clear that that's bootstrapping. If the only evidence they had that he was lying is the very same evidence that's meant to prove guilt, then there's no additional proof that comes from the statement. But even on that point, Your Honor, in terms of what Scheckman actually said, first of all, I'd say his testimony was contradictory. I'm not going to argue about the evidence, but I'll just point out that he said at page 446 of the record, the appendix that Klein had mentioned Pfizer initially, the notes of the government interview on page 488 indicate that he did not mention anything about that. But again, even if it did, it doesn't really get to the point here. Let's just say that Shulman had said Pfizer. Let's just say he had said it would be nice to be King for a day because there is something coming up with Pfizer that will be a big deal. That still doesn't convey purpose. It doesn't prove purpose. They have to argue, and they do argue, that the significance is, well, he lied, and why is he lying other than that he must be guilty, he must have had consciences of guilt, and that's a component of their proof. But they don't have the evidence for that. You can't take the later events and use those to bootstrap into proving that he lied and then use that to go prove the crime, to prove the purpose. It's simply not there. Thank you. Good morning. May it please the Court, my name is David Pitluck. I'm an assistant United States attorney in the Eastern District of New York, and I represent the United States in this matter. I think at bottom, Your Honor, the defendant is trying to have this court overturn a jury's verdict and the lengthy, well-reasoned opinion from the judge who presented over the trial based on a very myopic, one-sided view of the evidence that is specifically rejected by this court on repeated occasions. As this court has noted many times, the totality of the evidence is what this court evaluates. The government doesn't need to negate every theory of evidence. Instead, what they do is they try to attack each of the government's pieces of evidence individually. Now, we submit that, as we did in our papers, that those arguments don't hold water individually, but taken together, they demonstrate all of the elements of insider trading and they demonstrate certainly far in excess of the very heavy burden that he must meet here that there was intent to conduct in those trading. And I think that there's a little bit of debate about the standard, but all of the evidence that's being argued here and all of the evidence that's prevented and the inferences that the appellant is now, ironically, asking this court to reverse were all presented to the jury. And as this court is aware, those are all taken in favor of the government. So it's not like anything here wasn't presented to the jury and considered and evaluated, and they had it before them. They had the opportunity. Does it make sense that Mr. Shulman would have risked his license, his career, for $15,000? Your Honor, I've stopped divining why people are incentivized to commit crime. There are people who have appeared before this court engaged in insider trading that are far wealthier, that had far more to lose and did it anyway. What we presented at trial was evidence not just of the crimes and of all of the evidence that went around the intent, including the disclosure, the circumstances of the disclosure, what was actually said, what was lied about, but we also did present evidence of a motive, even though we weren't required to do so. Now, he provided material nonpublic information to somebody who had discretionary authority and could trade in his account. He made $15,000. That's a lot of money to somebody. Is there any evidence that there was any communication between Shulman and Klein about King Pharmaceuticals after August 10th? There was none presented at trial, Your Honor, but as we argued at trial in which the jury was clearly considered, there didn't need to be. The tip had been made. Mr. Shulman received his account statements that showed, as the evidence established, it showed at minimum that he read the first page, which we presented evidence, showed drastic increases in value and in shares in equity stock. There didn't need to be. This wasn't a crime that required a follow-through. We didn't need to have calls, and the jury certainly didn't feel the need to evaluate them. The appellant has posited that they would expect to see that evidence, but that's not the standard. That's not what's relevant. We're not required to prove all of these things. We proved the elements. It certainly would have been easier had they called afterwards, but it wasn't necessary. And, Your Honor, I think there might be some confusion about the Enzo piece. There are two points I want to raise. Your Honor, the government presented Enzo as a way in which Robert, for two purposes. One, to show that Robert Shulman knew Tibor Klein would trade in the stocks of his client. And, even though his explanation shifted, his last explanation was he told Tibor Klein that he shouldn't do that again because it was wrong. Now, that demonstrates that he knew that the tipping him on material nonpublic information was wrong. And it also demonstrates that his story changed on it. And I think that when Robert Shulman made that tip, the likelihood that just months later he would provide material nonpublic information to his investment advisor again without the intent he'd trade on it is simply implausible. And, finally, I would like to also point out that the Enzo piece is relevant because one of the arguments at trial was. . . The fact that Klein did it suggests that, in that conversation, Shulman told him to go ahead and do it. Implied that he should go ahead and do it. Absolutely, or at least knew the consequences of what would happen when he did it. And it was also relevant. And the appellant wants us to dismiss all of the arguments that were made at trial. But they're very relevant because it's how the jury assessed the evidence and credibility. But one of the arguments that was made was Robert Shulman trusted Tibor Klein not to trade. That doesn't hold water when he's already, by his own admission, already traded improperly in a stock before. And I think the last point I would like to make, and then unless the Court has any other questions, is the king for a day statement is the large portion of the trial, as the Court has certainly seized upon, was devoted to establishing that Robert Shulman said much more than that. And the fact that he gave that specific information is evidence of his intent, and that was how it was argued. The point about the false exculpatory, which was, as we argued at trial and as the district court noted, is the false exculpatory is also circumstantial evidence of guilt. And the false exculpatory, the withholding of specific information to the point that it made no sense, is relevant for the jury's consideration of what Robert Shulman intended when he made the actual comments that he made. Unless the Court has any other questions, I will. I do have a question. Yes. On page 33, footnote 16, in your discussion of U.S. v. Copeland. Yes, Your Honor. You would like us to overturn Copeland unilaterally? Isn't that something that we would have to do as an in-bank court? Your Honor, we're not. Your Equipose argument. Your Honor, I would obviously be happy to engage in the Equipose theory. What we were, and we've noted some tension in this, we've noted that past panels have seen tension in this. Judge Gleeson, former Judge Gleeson from our bench, has noted in an Irving opinion in 2010 that there is tension between the Copeland line of cases and the, probably going to butcher the name, the Guadagna line of cases. We were simply pointing that out. We're not asking the Court to overturn Copeland at this point because the Court doesn't need to. This isn't the case where the Equipose rule is even remotely relevant. We were just using this to note the standard, which this Court, including some of the members of this panel, recently articulated in Martoma, which is when inferences are drawn both ways, and I can quote the exact language, but it's in Martoma at, I believe, 76, when it's cited to Jow and said, A judgment of acquittal is warranted only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt. And obviously the Guadagna case has language that if the Court concludes that either of the two results are fairly possible, that is reasonable doubt or beyond reasonable doubt, the Court must let the jury decide the matter. Your Honor, we're simply pointing out the tension between the cases. I know that a number of panels recently, maybe not so recently, have had to address this. Again, I don't believe this is the case. We're not asking here because it's not relevant. But obviously the appellant here is hanging his hat on the fact that he believes each piece of evidence, which was already advanced to the jury, goes both ways. Well, one, in totality, which is even what Copeland says, you have to evaluate all of the evidence in totality and in favor of the government. And after that, whether or not they're equal is the equipose argument in Copeland. That doesn't even come into play here remotely for all the reasons. There are litanies of evidence as to the circumstantial evidence of Mr. Shulman's intent in making that tip. And I think, obviously, as the Court also noted in Martoma, circumstantial evidence of intent is not only acceptable, it's commonplace. It's very rare that it's proven through other format. That was when the Court also cited, the Martoma Court also cited Salome at 76. As a general rule, most evidence of intent is circumstantial. There's nothing less persuasive or strong about the government's case because much of the intent argument was proven through circumstantial evidence. There was a lot of circumstantial evidence. Any other questions? I will sit down. Thank you. Thank you. Thank you, Your Honor. Let me briefly address the points, the data points that were just mentioned as evidence of purpose. If you take each of them individually and I submit collectively, they don't begin to come close to show what the government needed to show here. The $15,000, there was no motive there. The $15,000, the only motive they came up with was that his wife said apparently that it would be nice to retire at 60. This was when he was 52. If that's a motive, in other words, that because in eight years from now I'd like to be able to retire when I'm making a million dollars and therefore I would steal $15,000, commit fraud for $15,000, then any case with any material number provides motive. That's not motive. Every case would have that. There were no drastic increases on the page, on the first page of his IRA statement. You can look at it yourselves, Your Honor. It's absolutely not there. I studied it last night. There is no way somebody would read that and that's the only evidence they had and figure out that there must have been trading in a stock that he had as a client. How's the jump in equity holdings? It's a very small jump. There is no evidence that he looked at anything beyond that. They don't have the evidence. It just simply doesn't exist. This is just pure speculation. Saying that because somebody gets IRA statements, therefore they must have known. The Court said in the Cassessi case that an assumption that people read things like that, and here it's even worse, would have to read 10 pages in, would prove something is not very strong. And one brief thing, and then I want to make one final point about the false exculpatory. It's remarkable to me the government standing here and arguing that the jury was allowed to infer guilt from the false exculpatory. They absolutely did not argue that to the jury, and in fact, the Court below said they did not argue that. There would have had to have been limiting instructions if they had argued that. They're not allowed to argue that. That's not a basis for this conviction that they can defend here. Let me finish with this, Your Honors, because I know I don't have very much time. In Martoma 1, Judge Katzman and Judge Chin, you explained that there might be insider trading cases that would test, in your words, the outer boundaries of when a jury is entitled to infer, relying on circumstantial evidence, that a particular disclosure was made with the expectation the recipient would trade on it. And if that were to happen, you said that the ultimate protection to defendants who did not commit a crime would come from the appellate review of the sufficiency of the evidence, and even reversal if that was appropriate. This is the kind of case you're talking about, Your Honors, I would submit. If you look at what the government actually has here, they did not prove purpose, and if personal benefit, as the Martoma Court ruled, is of less importance now, or at least it's easier to show, that is the litmus test, is the proof of purpose, and they did not have it here. Thank you, Your Honors. Thank you both for your arguments. The Court will reserve decision.